C.D.S., INC., Plaintiff,

v.

**BRADLEY ZETLER, CDS, LLC, Rapid Systems CC, and John Does 1–5, Defendants.**

**16 Civ. 3199 (VM)**

United States District Court, S.D. New York.

Signed September 30, 2016

Jeremy Evan Deutsch, Alfred N. Metz, Deutsch, Metz & Deutsch, LLP, Ami Bhatt, Winston & Strawn LLP, Christian Vincent Cangiano, Norris, McLaughlin & Marcus, P.A., New York, NY, for Plaintiff.

Ihsan Dogramaci, The Law Office of Ihsan Dogramaci, Joshua Martin Macleod, Wachtell, Lipton, Rosen & Katz, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

Plaintiff C.D.S., Inc. ("C.D.S.") commenced this action against defendants Bradley Zetler ("Zetler"), CDS, LLC, and Rapid Systems CC (collectively with Zetler and CDS, LLC, "Rapid Systems") alleging in its complaint ("Complaint," Dkt. No. 1.) various violations of state and federal law. Rapid Systems, in its First Amended Answer, Counterclaims and Jury Demand ("Amended Answer," Dkt. No. 91) counterclaimed, asserting several direct and derivative claims against C.D.S.; its CEO, Diane Treat ("Treat"); against three directors of C.D.S., Jerome Viollion ("Viollion"), Christelle Riot ("Riot"), and Christophe Racle ("Racle"); and against the majority shareholder of C.D.S., Jerome Marechaux ("Marechaux," together with Treat, Viollion, Riot, and Racle, the "Individual Counterclaim Defendants").

On August 3, 2016, the Court issued an order (the "August 3 Order") denying, among other things, Rapid Systems' motion to stay this action pending resolution of Rapid Systems' related breach-of-contract litigation in France (the "French Action"). C.D.S., Inc. v. Zetler, 198 F.Supp.3d 323, 328–29, No. 16 CIV. 3199, 2016 WL 4257745, at *1 (S.D.N.Y. Aug. 3, 2016). Rapid Systems now moves for reconsideration of the part of the August 3 Order that denied its motion to stay. ("Motion for Reconsideration," Dkt. No. 77.)

Since the August 3 Order, the parties have, pursuant to the Court's Individual Practices, exchanged numerous pre-motion letters. The Court construes the correspondence in C.D.S.'s pre-motion letters as (1) a motion by C.D.S. for an anti-suit injunction ordering Rapid Systems to withdraw from the French Action ("Motion for an Anti–Suit Injunction") and (2) a motion by C.D.S. to dismiss Rapid Systems' first, second, fourth, fifth, sixth, seventh, eighth, and ninth counterclaims ("Motion to Dismiss").

For the reasons set forth below, Rapid Systems' Motion for Reconsideration is DENIED in its entirety, C.D.S.'s Motion for an Anti–Suit Injunction is DENIED in its entirety, and C.D.S.'s Motion to Dismiss is DENIED in its entirety.

## I. BACKGROUND

C.D.S. filed a Complaint against Rapid Systems and against nominal defendants Amazon Web Services, Inc. ("Amazon") and Rackspace US, Inc. ("Rackspace")[1] seeking declaratory judgments determining that Rapid Systems' copyright and trademark registrations for C.D.S.'s software are void, and that C.D.S. is the owner of certain accounts hosted by Amazon and Rackspace. (See Dkt. No. 1.)

Rapid Systems answered and asserted the following counterclaims: (1) infringement by C.D.S. of Rapid Systems' copyright in the software; (2) infringement by the Individual Counterclaim Defendants of Rapid Systems' copyright in the software; (3) misappropriation of Rapid Systems' trade secrets—the source code, stored procedures, scripts, and database for the software; and (4) civil conspiracy by the Individual Counterclaim Defendants to misappropriate the software. (See Dkt. No. 85.) Rapid Systems has since amended its answer, asserting the same four direct counterclaims and adding five derivative counterclaims by Zetler, derivately on behalf of C.D.S., against the Individual Counterclaim Defendants. (See Amended Answer, Dkt. No. 91.)

On August 3, 2016, the Court denied, among other things, Rapid Systems' motion for a stay of the instant action pending disposition of the French Action, which asserts claims brought by Rapid Systems against C.D.S. and its French counterpart,

CDS SARL for breach of a 2001 Exclusive Distributorship Agreement (the "2001 Agreement"). See C.D.S., 198 F.Supp.3d at 329–30, 334–35, 2016 WL 4257745, at *2, *6. In the August 3 Order, the Court evaluated Rapid Systems' motion for a stay under the factors outlined in Royal and Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc., 466 F.3d 88, 93–94 (2d Cir. 2006), and found that a stay was not warranted. (See id. at 330–35, 2016 WL 4257745 at *3–6.)

On August 9, 2016, Rapid Systems CC appeared and filed pleadings in the French Action. (See Billard Decl., Dkt. No. 78, Ex. 1.) Rapid Systems CC attached to its pleadings in the French Action an opinion by "a technology expert" regarding the software at issue. (Billard Decl., Dkt. No. 78, Ex. 2.)

## A. RAPID SYSTEMS' MOTION FOR RECONSIDERATION

On August 18, 2016, Rapid Systems moved, pursuant to Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, for reconsideration of the Court's denial in the August 3 Order of Rapid Systems' earlier motion for a stay. (See Dkt. No. 77.) Rapid Systems' memorandum in support of its motion states that "reconsideration is sought based on the pleadings filed in the Commercial Court of Paris on August 9, 2016." (Memorandum of Law in Support of Defendants' Motion for Reconsideration, dated August 18, 2016, "Reconsideration Memorandum," Dkt. No. 78, at 11.) Rapid Systems then evaluates the allegations made in France against each of the Royal and Sun Alliance factors discussed in the Court's August 3 Order,

---

1. C.D.S., Rackspace and Amazon stipulated to, and this Court so ordered, voluntary dismissal of the action against nominal defen-dants Rackspace and Amazon on July 11, 2016 (See Dkt. No. 70) and September 28, 2016 (See Dkt. No. 105), respectively.

arguing that a stay is warranted. (See id. (citing Royal and Sun Alliance, 466 F.3d at 94).)

C.D.S. filed an opposition to Rapid Systems' Motion for Reconsideration, arguing that no facts or controlling law were overlooked by the Court in the August 3 Order, and that Rapid Systems has not presented any new facts in connection with its motion. (Plaintiffs' Brief in Opposition to Defendants' Motion for Reconsideration, dated September 1, 2016, "Reconsideration Opposition," Dkt. No. 89.)

Rapid Systems replied, arguing that C.D.S. fails to address, and therefore concedes, that the Royal and Sun Alliance factors counsel in favor of a stay. (Reply Memorandum of Law in Support of Rapid Systems' Motion for Reconsideration, dated September 12, 2016, "Reconsideration Reply," Dkt. No 93.) Rapid Systems further argues that reconsideration is warranted because "Rapid Systems did not previously have an opportunity to provide the Court with the pleadings filed in France." (Id. at 8 n.3.)

## B. C.D.S.'S MOTION FOR AN ANTI–SUIT INJUNCTION

By letter dated August 22, 2016, C.D.S. moved for an anti-suit injunction to prohibit Rapid Systems from pursuing the French Action. ("August 22 Injunction Letter," Dkt. No. 110.) C.D.S. argues that Rapid Systems, by asking the French Court to enjoin C.D.S. from asserting in this action that C.D.S. owns the relevant software code, is engaging in forum shopping that threatens to undermine the jurisdiction of this Court and the implementation of a preliminary injunction issued by

this Court by Decision and Order dated June 6, 2016, C.D.S., Inc. v. Zetler, 190 F.Supp.3d 375, No. 16 CIV. 3199, 2016 WL 3275173, at *3 (S.D.N.Y. June 6, 2016). See id. C.D.S. also argues that the parties have no connection to France other than the 2001 Agreement, making New York a more appropriate venue. (Id.)

By letter dated August 24, 2016, Rapid Systems opposed C.D.S.'s request for an anti-suit injunction, arguing (1) that the preliminary injunction will continue to be implemented during the proceedings in the French Action; (2) that several claims in front of this Court are not at issue in France, so the French Action does not threaten the jurisdiction of this Court over the dispute; and (3) that the dispute and, in particular, the Individual Counterclaim Defendants, have many connections to France even outside the contract at issue in the French Action. (See "August 24 Injunction Response Letter," Dkt. No. 112.)

The same day, both parties submitted to the Court additional correspondence regarding C.D.S.'s request for an anti-suit injunction, largely reiterating their earlier arguments. ("August 24 Injunction Reply Letter," Dkt. No. 113; "August 24 Injunction Sur–Reply Letter," Dkt. No. 114.)

## C. C.D.S.'S MOTION TO DISMISS

By letter dated September 15, 2016, C.D.S. moved to dismiss all but one of Rapid Systems' counterclaims. ("September 15 MTD Letter," Dkt. No. 118.)[2] C.D.S. argues that (1) the first counterclaim, against C.D.S. for infringement of Rapid Systems' copyrights in the software source code, should be dismissed because

---

**2.** The September 15 MTD Letter incorporates and renews the arguments made in C.D.S.'s prior letters dated August 22, 2016 ("August 22 MTD Letter," Dkt. No. 111) and September 8, 2016 ("September 8 MTD Letter," Dkt. No. 90), regarding dismissal of the first, second and fourth counterclaims asserted in Rapid Systems' Answer dated August 24, 2016.

Rapid Systems fails to allege with sufficient specificity what actions undertaken by C.D.S. constitute copyright infringement; (2) the second counterclaim, against the Individual Counterclaim Defendants for contributory copyright infringement, should be dismissed because there is no underlying infringement by C.D.S., and, in any event, the generalized allegations against the Individual Counterclaim Defendants fail to satisfy the notice requirement in Rule 8 (a) of the Federal Rules of Civil Procedure ("Rule 8(a)"); and (3) the fourth counterclaim, for civil conspiracy, should be dismissed because New York law does not provide a separate cause of action for civil conspiracy, because the claim fails to plead sufficient facts to satisfy Rule 8(a), and because under the intra-corporate conspiracy doctrine, agents of a corporation cannot by law be held to have conspired to take unlawful action through the corporation. (See id.; see also August 22 MTD Letter, Dkt. No. 111; September 8 MTD Letter, Dkt. No. 90.)

C.D.S. also argues that all of Zetler's derivative claims—counterclaims five through nine—should be dismissed because (1) the Amended Answer is not verified and does not allege that a demand was made on the board, as required by Rule 23.1 of the Federal Rules of Civil Procedure; (2) Zetler's conflict of interest as a shareholder of both Rapid Systems CC and C.D.S., as former CEO of C.D.S., and as a plaintiff bringing direct claims against C.D.S., makes him unsuitable to bring derivative claims on behalf of C.D.S.; and (3) the derivative claims are otherwise defectively pleaded. (Id.)

By letter dated September 22, 2016, Rapid Systems opposed C.D.S.'s Motion to Dismiss. ("September 22 MTD Letter," Dkt. No. 119.) Rapid Systems argues that C.D.S.'s Motion to Dismiss should be denied because: (1) Rapid Systems has alleged that C.D.S. had copies of the source code on its own computers and therefore could and did copy the source code to create derivative works; (2) Marechaux orchestrated the infringing conduct with the other Individual Counterclaim Defendants; and (3) the third counterclaim, against C.D.S. for trade secret misappropriation, underlies the civil conspiracy claim, and the civil conspiracy doctrine does not apply because the conspiracy existed before Treat, Viollion, Riot, and Racle were appointed to serve as CEO and directors, respectively. (See id.)

## II. RAPID SYSTEMS' MOTION FOR RECONSIDERATION

### A. LEGAL STANDARD

 Reconsideration of a previous order by the court is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F.Supp.2d 613, 614 (S.D.N.Y. 2000)(internal citations and quotation marks omitted). Rule 6.3 is intended to " 'ensure the finality of decisions and to prevent the practice of a losing party ... plugging the gaps of a lost motion with additional matters.' " S.E.C. v. Ashbury Capital Partners, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F.Supp. 169, 170 (S.D.N.Y. 1988)). A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and prevent Rule 6.3 from being used to advance different theories not previously argued or as a substitute for appealing a final judgment. See Montanile v. Nat'l Broad. Co., 216 F.Supp.2d 341, 342 (S.D.N.Y. 2002); Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999). "A motion to reconsider should not be granted where

the moving party seeks solely to relitigate an issue already decided." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

█ "The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478 at 790 (2d ed.)). For evidence to be considered "newly available," it must be "evidence that was truly newly discovered or could not have been found by due diligence." Space Hunters, Inc. v. United States, 500 Fed.Appx. 76, 81 (2d Cir. 2012) (internal quotation marks omitted).

█ A motion for reconsideration under Rule 6.3 must "set[ ] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." Fed. R. Civ. P. 6.3. The movant must point to controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and "that might reasonably be expected to alter the conclusion reached by the court." Shrader, 70 F.3d at 257.

## B. APPLICATION

█ Rapid Systems' Reconsideration Memorandum cites no controlling law overlooked by the Court that might "reasonably be expected to alter" the outcome of the August 3 Order. See Shrader, 70 F.3d at 257. Rapid Systems also does not argue that reconsideration is necessary to prevent an error or injustice. The Court therefore finds that there has been no "intervening change of controlling law" or "a need to correct a clear error or prevent

manifest injustice" that justifies reconsideration of the August 3, 2016 Order. See Virgin Atl. Airways, Ltd., 956 F.2d at 1255 (internal quotation marks omitted).

The last major ground justifying reconsideration is the availability of new evidence. See id. Rapid Systems devotes all of one sentence of its Reconsideration Memorandum to describing the basis of its motion as being "the pleadings filed in the [French Action] on August 9, 2016." (Dkt. No. 78.) Rapid Systems instead devotes seven pages to examining the Royal and Sun Alliance factors, which go to the merits of a motion for a stay—the motion the Court already denied in the August 3 Order on the basis of its analysis of the Royal and Sun Alliance factors. To this extent, Rapid Systems' motion does nothing more than to relitigate matters the Court already decided and convey its unhappiness with the outcome.

Rapid Systems' pleadings in the French action, however, is not evidence that "was truly newly discovered." See Space Hunters, Inc. v. United States, 500 Fed.Appx. 76, 81 (2d Cir. 2012). Rapid Systems' pleadings in the French Action assert a claim for breach of a contract pursuant to which Rapid Systems claims it is entitled to an injunction against C.D.S. As Rapid Systems itself admits, that is what "Rapid Systems always stated would be the object of the French Action." (August 24 Injunction Response Letter, Dkt. No. 112.) That the breach-of-contract claim in the French Action warrants a stay of this litigation was also raised and argued vigorously by Rapid Systems—and rejected by the Court in the August 3 Order. See C.D.S., 198 F.Supp.3d at 330–31, 2016 WL 4257745, at *3. Rapid Systems cannot rely on its pleading, which contains the same arguments Rapid Systems always told this Court it would assert in the French Action, as a means of "securing a rehearing on the

merits, or otherwise taking a 'second bite at the apple' " on its original motion for a stay. Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998).

Rapid Systems' Motion for Reconsideration is therefore DENIED.

## III. C.D.S.'S MOTION FOR AN ANTI–SUIT INJUNCTION.

### A. LEGAL STANDARD

■■■ Although the Court has the power to enjoin parties properly before it from pursuing a foreign proceeding, that authority should rarely be used. See U.S. v. Davis, 767 F.2d 1025, 1038 (2d Cir. 1985). Because an anti-suit injunction would divest a foreign court of jurisdiction, "principles of comity counsel that injunctions restraining foreign litigation be used sparingly and granted only with care and great restraint." LAIF X SPRL v. Axtel, S.A. de C.V., 390 F.3d 194, 199 (2d Cir. 2004) (internal quotation marks omitted). Even " '[p]arallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other.' " China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 36 (2d Cir. 1987) (alterations omitted) (quoting Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 926 (D.C. Cir. 1984)).

■■■ To determine whether an anti-suit injunction is warranted, courts in the Second Circuit apply a multi-factor test. As a threshold matter, the parties must be the same in both matters, and resolution of the first action must be dispositive of the action to be enjoined. Paramedics Electromedicina Comercial Ltda v. GE Medical Systems Information Technologies, Inc., 369 F.3d 645, 652 (2d Cir. 2004) (citing China Trade, 837 F.2d at 35).

If the two threshold requirements are met, five additional factors determine whether to enjoin the foreign proceeding:

(1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.

China Trade, 837 F.2d at 35.

### B. APPLICATION

■■■ The threshold questions of whether the parties in the two actions are the same and whether resolution of this action would be dispositive of the French Action were already substantially answered by the Court in the August 3 Order. The Court there stated:

The French Action is a breach of contract suit brought by Rapid Systems against CDS SARL and C.D.S. for allegedly challenging the ownership of Portfoliopad in violation of the 2001 Agreement. The cause of action alleged by Rapid Systems in the French Action is distinct from any cause of action alleged by C.D.S. in the instant action.

C.D.S., 198 F.Supp.3d at 331–33, 2016 WL 4257745, at *4. The fact that C.D.S. has now learned that one of the remedies requested by Rapid Systems in the French Action is an injunction preventing C.D.S. from asserting ownership over the software code does not mean that the rulings of this Court will be dispositive of the issues litigated in France. As C.D.S. itself argued, and as the Court held in the August 3 Order, "even if Rapid Systems asserts the 2001 Agreement as a defense to C.D.S.'s claims of ownership over Agencypad, the allegations in the Complaint exist

outside of the 2001 Agreement." Id. Resolution of this action may, therefore, not be dispositive of the French Action.

Even if it resolution of the claims before the Court would be dispositive of the French Action, the remaining factors counsel against issuing an anti-suit injunction. First, allowing the parties to continue litigating in France does not frustrate important United States policy. Although the United States has an important interest in uniform application of its copyright laws, "[t]he presumptive enforceability of forum selection clauses reflects a strong federal public policy of its own." Martinez v. Bloomberg LP, 740 F.3d 211, 218 (2d Cir. 2014).

Second, the French Action is not vexatious because it was not brought by Rapid Systems, as C.D.S. alleges, "to undermine this Court's jurisdiction" (see August 22 Injunction Letter at 3, Dkt. No. 110) but to enforce the 2001 Agreement, to which C.D.S. is a party.

Third, this Court does not have in rem or quasi in rem jurisdiction over this matter, and an order from the French court would not divest this Court of in personam jurisdiction over the parties and at least part of their dispute. As further discussed in the August 3 Order, resolution of the French Action would not resolve all of the claims brought by C.D.S. in this Court, so there is no threat to this Court's jurisdiction.

Fourth, there are no other equitable considerations counseling in favor of enjoining Rapid Systems from pursuing the French Action.

Fifth, although there will likely be some expense and inconvenience for the parties in having to litigate in France, that prospect is true for every case where there are parallel proceedings, and that is the bargain C.D.S. struck in entering into the 2001 Agreement.

■ C.D.S.'s central argument with respect to all the China Trade factors is that Rapid Systems' bringing the French Action "is forum shopping at its most base and should be stopped." (August 22 Injunction Letter at 2, Dkt. No. 110.) C.D.S., however, finds itself having to litigate the French Action because it signed the 2001 Agreement, which has a forum selection clause requiring litigation in France. A contractual forum selection clause "should be invalidated only when the resisting party satisfies the 'heavy burden' of showing that 'it would be unfair, unjust, or unreasonable to hold that party to his bargain.'" Martinez, 740 F.3d at 219 (quoting M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 13–14, 19, 18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). C.D.S. has made no such showing.[3]

C.D.S.'s Motion for an Anti–Suit Injunction is therefore DENIED.

---

3. As Rapid Systems points out, the cases cited by C.D.S. that enjoined a foreign litigation did so because the foreign litigation was in conflict with, rather than pursuant to, a valid forum selection or governing law clause. See Ibeto Petrochemical Indus. Ltd. v. M/T Beffen, 475 F.3d 56, 63 (2d Cir. 2007) (enjoining litigation in Nigeria where there was a valid agreement to arbitrate in London); Stolt Tankers BV v. Allianz Seguros, S.A., No. 11 CIV. 2331, 2011 WL 2436662, at *5 (S.D.N.Y. June 16, 2011) (same with litigation in Bra-

zil); Dandong v. Pinnacle Performance Ltd., No. 10 CIV. 8086 LBS, 2011 WL 6156743, at *5 (S.D.N.Y. Dec. 12, 2011) ("the forum selection clauses ... did not preclude suit in New York [and] New York law governs the dispute"); Software AG, Inc. v. Consist Software Sols., Inc., No. 08 CIV. 389, 2008 WL 563449, at *25 (S.D.N.Y. Feb. 21, 2008), aff'd, 323 Fed.Appx. 11 (2d Cir. 2009) (granting an injunction where New York law governed the contract at issue).

## IV. C.D.S.'S MOTION TO DISMISS

### A. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 127 S.Ct. 1955. The task of a court in ruling on a motion to dismiss is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F.Supp.2d 566, 574 (S.D.N.Y. 2005) (quoting Levitt v. Bear Stearns & Co., Inc., 340 F.3d 94, 101 (2d Cir. 2003)) (internal quotation marks omitted), aff'd sub nom., Tenney v. Credit Suisse First Bos. Corp., Nos. 05–3430–CV, 2006 WL 1423785 (2d Cir. May 19, 2006). A court must accept as true all well-pleaded factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

Rule 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where Rule 8(a)'s pleading standard governs, "dismissal is improper as long as the complaint furnishes ade-quate notice of the basis of the plaintiff's claim ... and 'relief could be granted under [some] set of facts consistent with the allegations.'" In re Global Crossing, Ltd. Sec. Litig., No. 02 Civ. 910, 2005 WL 2990646, at *8 (S.D.N.Y. Nov. 7, 2005) (alteration in original) (quoting Swierkiew-icz v. Sorema N.A., 534 U.S. 506, 512–14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

### B. APPLICATION

■ As discussed in the August 3 Order, material issues of fact pertaining to the ownership of Agencypad, which is at the heart of the claims in this action, remain disputed. C.D.S., 198 F.Supp.3d at 340, 2016 WL 4257745, at *11. With respect to the first and second counterclaims, if it is true, as the Court must assume, that C.D.S.'s employees stored the code on their personal computers and copied it to create derivative works even after Rapid Systems revoked permission to use the software code in which it holds copyrights, those facts are sufficient to "raise a right to relief above the speculative level." See Twombly, 550 U.S. at 555, 127 S.Ct. 1955. Whether such copying did indeed take place fundamentally raises a factual matter not properly determined on a motion to dismiss.

■ With respect to the remaining direct and derivative counterclaims, the Court finds that partial adjudication of some of the claims asserted against the Individual Counterclaim defendants would be premature, would not facilitate resolution of the underlying dispute, and thus would be an inefficient use of the Court's resources. Rapid Systems alleges that Viollion, Riot and Racle "agreed with Marechaux" to appoint Treat as CEO of C.D.S., and that the Individual Counterclaim Defendants caused C.D.S., under Treat's and Marechaux's management, to misappropriate Rapid Systems' trade se-

crets and violate its copyright by copying the software code and creating derivative works. (Amended Answer, Dkt. No. 91, ¶¶ 234–252.) These allegations are sufficient to satisfy the low pleading standard of Rule 8(a). Moreover, these questions concern substantive issues more appropriately addressed upon a fuller evidentiary record developed during discovery. The Court cannot find that there are no "set of facts consistent with the allegations" that could warrant relief from the Court. See In re Global Crossing, Ltd. Sec. Litig., No. 02 Civ. 910, 2005 WL 2990646, at *8 (S.D.N.Y. Nov. 7, 2005) (alterations omitted). Consequently, dismissal is not proper at this stage.

C.D.S.'s motion to dismiss Rapid Systems' first, second, fourth, fifth, sixth, seventh, eighth and ninth counterclaims is therefore premature and thus is DENIED.

## V. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 77) of defendants Bradley Zetler, CDS, LLC, and Rapid Systems CC (collectively, "Rapid Systems") for reconsideration of the Court's order dated August 3, 2016 (Dkt. No. 76) is **DENIED**; and it is further

**ORDERED** that C.D.S. Inc.'s motion for an anti-suit injunction (Dkt. No. 110) is **DENIED**; and it is further

**ORDERED** that C.D.S. Inc.'s motion to dismiss Rapid Systems' first, second, fourth, fifth, sixth, seventh, eight, and ninth counterclaims (Dkt. No. 111) is **DENIED**.

**SO ORDERED.**